UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ENVIRONMENTAL ENERGY SERVICES, INC., <br> Plaintiff, <br><br> v. <br><br> COALOGIX, INC., and WILLIAM MCMAHON <br> Defendants. | : CIVIL NO.: <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : AUGUST 13, 2008 |

## COMPLAINT AND JURY DEMAND

Plaintiff, Environmental Energy Services, Inc., ("EES") by its undersigned attorneys, alleges, on knowledge as to its own conduct, and upon information and belief as to the conduct of others, as follows:

### Summary of Claims

1.  This action arises from the tortious interference by CoaLogix, Inc. ("CoaLogix") with plaintiff EES' rights under an agreement with Solucorp Industries, Ltd. ("Solucorp"). Pursuant to the agreement, EES was given, among other things, the exclusive rights to market and distribute a Solucorp technology designed to eliminate hazardous mercury emissions from coal-fired power plants. Since 2005, EES has been actively marketing such technology to electric utilities throughout the United States pursuant to EES' agreements with Solucorp.

2.   As alleged fully below, while engaged in discussions to buy EES, CoaLogix discovered EES' lucrative agreement with Solucorp and then engaged in a series of acts to deprive EES of its rights under the agreement. Defendant William McMahon ("McMahon"), CoaLogix's Chief Executive Officer and President, orchestrated the company's tortious interference with EES' agreement, and made fraudulent misrepresentations to EES.

3.   Accordingly, by this action, among other things, plaintiff seeks to impose a constructive trust upon the revenues that CoaLogix will earn as a result of its tortious conduct. Plaintiff also seeks money damages, as well as attorney's fees and punitive damages, against each of the defendants.

### Parties and Jurisdiction

4.   Plaintiff EES is a Connecticut corporation, whose principal office is located in Sandy Hook, Connecticut.

5.   Defendant CoaLogix is a Delaware corporation, whose principal office is located in Charlotte, North Carolina.

6.   Defendant McMahon is a North Carolina resident who at all relevant times was the Chief Executive Officer and President of CoaLogix.

7.   Jurisdiction exists pursuant to 28 U.S.C. § 1332, based on complete diversity of citizenship, and because the amount in controversy exceeds $75,000.

8.   Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 because, *inter alia,* a substantial portion of the facts and the acts and omissions complained of herein occurred in Connecticut.

### The 2005 Agreement

9.   EES is an innovative combustion engineering, services and marketing company, serving primarily electric utilities throughout North America. It was founded in 1991. EES designs and implements highly efficient fuel treatment programs tailored to enhance operations, reduce maintenance and decrease emissions of detrimental pollutants in oil and coal-fire boilers operated by electric utilities.

10.   All coal-fired boilers in the United States need to control their emissions in order to eliminate the high risk and health problems associated with mercury pollution, and in order to comply with government regulations.

11.   Defendant CoaLogix is a company 85% owned by Acorn Energy, Inc. ("Acorn"), a publicly traded Delaware corporation which invests in companies in the energy industry. John Moore is the President and Chief Executive Officer of Acorn.

12.   Non-party Solucorp is a Canadian corporation and is a developer of technologies for the remediation and prevention of hazardous heavy metal contamination. Solucorp has a patent pending for a technology which reduces hazardous mercury emissions from coal-fired power plants, called IFS-2C (the "IFS-2C technology").

3

13. In or about May 2005, EES signed an agreement with Solucorp and its wholly owned subsidiary, Integrated Fixation Systems Co. ("IFS"), which granted EES, among other things, the exclusive right to market and distribute the IFS-2C technology within the United States to approximately twenty-four (24) electric utilities and the non-exclusive right to market and distribute IFS-2C to additional utilities (the "2005 Agreement"). Solucorp entered into the 2005 Agreement in order to combine EES' manufacturing, systems applications, technical expertise, sales and marketing expertise, as well as its established utility client base, with Solucorp's IFS-2C technology.

14. In a press release issued jointly by Solucorp and EES in connection with the 2005 Agreement, Solucorp and EES announced that under the 2005 Agreement, Solucorp was appointing EES as Solucorp's North American marketing arm for the IFS-2C technology.

15. Pursuant to the Agreement, EES actively promoted the IFS-2C technology to utilities throughout the country.

### CoaLogix's Interest in EES

16. In the fall of 2007, CoaLogix approached EES and began to express interest in purchasing EES.

17. In or about November, 2007, EES met with representatives of CoaLogix and Acorn in North Carolina, and presented voluminous information about EES' business, and the expected market for the IFS-2C technology. All information was

disclosed by EES to CoaLogix pursuant to a non-disclosure agreement, which CoaLogix executed.

18. On or about December 28, 2007, CoaLogix executed and sent a letter of intent to EES' Connecticut offices offering to purchase EES for a payment of $10 million dollars ("Letter of Intent").

19. On or about January 17, 2008, McMahon met with EES in its Connecticut offices to discuss CoaLogix's acquisition of EES. McMahon reaffirmed that CoaLogix intended to buy EES for $10 million and represented to EES: "I won't change the deal if you guys don't change the deal." At the meeting, EES gave to CoaLogix a copy of its 2005 Agreement with Solucorp, and CoaLogix reviewed and kept a copy of the agreement. CoaLogix further learned during such meeting that as a result of EES' marketing and development during the prior two and a half years, many electric utilities had expressed interest in the IFS-2C technology.

### EES' Successes to Date in Commercializing the IFS-2C Technology

20. Beginning in or about January 2008, EES successfully demonstrated the IFS-2C technology to two electric utilities with coal-fired plants, specifically, Reliant Energy, for the Conemaugh plant in Pennsylvania (the "Reliant Project"), and Montana Dakota Utilities ("MDU"), for the plant in Billings, Montana (the "MDU Project").

21. On or about February 6, 2008, Solucorp issued a press release announcing that it had accepted a proposal from EES, "a licensee of Solucorp," to

demonstrate the IFS-2C technology in or about April 2008 for Reliant Energy (the "February 6th Press Release"). Solucorp further announced that EES' upcoming demonstration in the spring of 2008 of the IFS-2C technology for the Reliant Project "sets the stage for commercialization of the IFS-2C technology for use in fuel burning power plants." Solucorp reaffirmed in the February 6th Press Release that EES is "Solucorp's North American marketing arm for its IFS-2C mercury remediation technology in the expansive U.S. coal-burning utility market," and that "EES is deploying its national sales network actively to promote IFS-2C to regions requiring efficient solutions to mercury emissions concerns."

22. On or about February 26, 2008, EES, Solucorp and IFS entered into a new agreement, superseding the 2005 Agreement, entitled the Implementation/Distribution Agreement ("I/D Agreement"). In the I/D Agreement, among other changes from the 2005 Agreement, Solucorp expanded EES' exclusive right to market and distribute IFS-2C technology within the entire United States, Mexico and Canada and expanded from twenty-four (24) to at least forty-three (43) the electric utilities listed on the Schedule A attached to the agreement, with the possibility of adding additional utilities.

23. Solucorp and IFS expressly agreed in the I/D Agreement that they would not "appoint or authorize any other party to market, solicit, or accept orders to distribute the product . . . to any users identified on Schedule A."

6

24. EES fully performed its obligations under the I/D Agreement, and marketed IFS-2C technology to the electric utilities on Schedule A thereto.

25. In or about February through March 2008, EES implemented and installed engineered pumping/storage systems for the Reliant and MDU Projects. Over the next few months, EES spent substantial time and resources manufacturing IFS-2C technology for the MDU Project.

26. From late March through mid-April 2008, McMahon made multiple telephone calls to EES executives in Connecticut reaffirming CoaLogix's intent to purchase EES.

27. CoaLogix and McMahon reneged on their promises and never purchased EES.

**The Unlawful Agreement Between CoaLogix and Solucorp**

28. CoaLogix used the confidential information that it reviewed pursuant to a non-disclosure agreement while visiting EES' Connecticut offices in January 2008, to pursue an agreement with Solucorp in order to obtain the identical rights provided to EES in the I/D Agreement.

29. Subsequently, and prior to May 1, 2008, Solucorp asked EES to sign a novation agreement assigning all of EES' rights under the I/D Agreement to CoaLogix. Pursuant to the I/D Agreement, EES reasonably withheld its approval of such an assignment.

7

30. On or about May 1, 2008, CoaLogix entered into an agreement with Solucorp to obtain an exclusive license to market and distribute the IFS-2C technology to electric utilities throughout North America, including all but two of the utilities on Schedule A to the I/D Agreement (the "CoaLogix Agreement"). CoaLogix entered into the CoaLogix Agreement even though it was fully aware that the I/D Agreement prohibited Solucorp and IFS from permitting any party except EES to market and distribute the IFS-2C technology to the list of approximately forty-three (43) utilities on Schedule A.

31. CoaLogix paid Solucorp $2 million to induce Solucorp to enter into the CoaLogix Agreement. The term of such agreement was for ten (10) years with an additional five (5) year renewal.

32. On or about May 1, 2008, McMahon announced that CoaLogix acquired the "exclusive worldwide license" to Solucorp's IFS-2C technology.

33. In a press release issued on or about June 3, 2008 concerning the CoaLogix Agreement ("June 3rd Press Release"), CoaLogix forecasted that the minimum revenues it would earn from its agreement with Solucorp, which unlawfully purported to transform EES' rights into CoaLogix's rights, would exceed $70 million during the first five (5) years of the agreement.

34. The June 3rd Press Release publicized that CoaLogix intended to spend up to $3 million on the marketing, sales, customer training, product installation and support

of the IFS-2C technology. It stated that "Solucorp's license rights with regard to EES are now held by CoaLogix under this agreement."

35. In entering into the CoaLogix Agreement with Solucorp, with knowledge of EES' rights under the I/D Agreement, with knowledge that EES never agreed to assign such rights to CoaLogix, and with the intent to erode and/or eliminate such rights, CoaLogix, in bad faith, intentionally interfered with EES' rights under the I/D Agreement.

### CoaLogix Attempts to Remove EES From the Picture

36. From in or about May through early July 2008, CoaLogix expressed several times that it wanted EES "out of the picture."

37. In or about June 2008, Solucorp refused to give critical pricing information for the IFS-2C technology to EES upon EES' request in connection with EES work on the MDU and Reliant Projects, and referred EES to obtain such pricing through CoaLogix. CoaLogix failed and refused to respond to EES' subsequent requests for pricing, thus interfering with EES' ability to complete the MDU and Reliant Projects.

38. In early July 2008, CoaLogix and Solucorp were aware that EES was prepared and about to complete the MDU Project, including, without limitation, shipping IFS-2C to MDU, and that EES was also scheduled to complete the Reliant Project.

39. On or about July 14, 2008, Solucorp notified EES that it was terminating the I/D Agreement because a press release issued by EES in June 2008 purportedly disclosed confidential information. Such accusation was untrue.

9

40. Thereafter, CoaLogix has contacted MDU and Reliant in order to attempt to complete the MDU and Reliant Projects, excluding EES from involvement in the Projects.

41. As a result of CoaLogix's conduct, EES will lose significant revenues, including but not limited to those revenues, which CoaLogix estimated to be up to $70 million, representing the market for the sale of the IFS-2C technology over the next five years.

## FIRST COUNT

### (Tortious Interference with Contract Against CoaLogix)

42. Plaintiff repeats and realleges Paragraphs 1 through 41 above, as if fully set forth herein.

43. Defendant CoaLogix had actual knowledge of the I/D Agreement.

44. CoaLogix knowingly and willfully interfered with the performance of the I/D Agreement by Solucorp, and/or knowingly and willfully induced Solucorp to breach, abrogate and/or disregard said agreement.

45. The foregoing conduct of CoaLogix was willful, malicious, in knowing violation of the rights of EES, and tortious and unlawful.

46. By virtue of the foregoing, EES has suffered injury and damages, for which defendant CoaLogix is liable.

### SECOND COUNT (Fraudulent Misrepresentation Against All Defendants)

47. Plaintiff repeats and realleges Paragraphs 1 through 46 above, as if fully set forth herein.

48. As alleged in detail above, McMahon and/or CoaLogix made the following representations of material fact to EES:

> (i) that CoaLogix would purchase EES for $10 million dollars; and
>
> (ii) that CoaLogix would keep confidential information disclosed by EES pursuant to the non-disclosure agreement.

49. The foregoing representations of material fact were false, and were made with the knowledge that they were false, or with disregard for their truth or falsity.

50. The foregoing representations of material fact were made in order to induce EES to rely on such statements to its detriment.

51. EES relied on the above misrepresentations of CoaLogix and McMahon by, among other things, foregoing other businesses opportunities and continuing to spend significant time, money and resources performing its obligations under the I/D Agreement.

52. By virtue of the foregoing, EES has suffered and continues to suffer injury and damages for which the defendants are liable.

### THIRD COUNT (Conversion Against CoaLogix)

53. Plaintiff repeats and realleges Paragraphs 1 through 52 above, as if fully set forth herein.

11

54. By virtue of the foregoing, CoaLogix knowingly and willfully converted and is continuing to convert EES' property.

55. By virtue of the foregoing, EES has suffered injury and damages, for which CoaLogix is liable.

## FOURTH COUNT

### (Connecticut Unfair Trade Practices Act Against all Defendants)

56. Plaintiff repeats and realleges Paragraphs 1 through 55 above, as if fully set forth herein.

57. EES is a person within the meaning of Conn. Gen. Stat. §§ 42-110a(3) and 42-110g(a) entitled to bring an action under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, et. seq. (CUTPA).

58. The foregoing actions of the defendants constitute unfair and/or deceptive acts or practices in the conduct of trade or commerce that are unethical, unscrupulous and offensive to public policy, and are a violation of Conn. Gen. Stat. § 42-110b(a).

59. The foregoing actions of the defendants were carried on in furtherance of and/or in connection with their trade or business.

60. As a result of the foregoing, EES has suffered an ascertainable loss of money and has suffered damages, in an amount to be determined at trial.

61. The foregoing actions of the defendants show calculated, deceitful and unfair conduct, and reckless indifference to the rights of EES. Accordingly, the defendants are liable to EES for punitive damages pursuant to Conn. Gen. Stat. § 42-110g(a).

62. EES is mailing a copy of this Complaint to the Attorney General of the State of Connecticut and to the Commission of Consumer Protection for the State of Connecticut, as required by Conn. Gen. Stat. § 42-110g(c).

### FIFTH COUNT (Unjust Enrichment Against CoaLogix)

63. Plaintiff repeats and realleges Paragraphs 1 through 62 above, as if fully set forth herein.

64. CoaLogix has been unjustly enriched by its conduct in that it received from EES benefits to which CoaLogix is not entitled, including, but not limited to, the benefits of the time, money and other resources invested by EES in marketing, sales and product installation of the IFS-2C technology for over three years.

65. By virtue of the foregoing, EES has suffered and continues to suffer injury and damages for which CoaLogix is liable.

### SIXTH COUNT (Equitable Relief Against CoaLogix)

66. Plaintiff repeats and realleges Paragraphs 1 through 65 above, as if fully set forth in herein.

67. EES has no adequate remedy at law.

68. By virtue of the foregoing, EES is entitled, among other things, to the following equitable relief:

(a) A decree compelling CoaLogix to render a full and complete accounting to EES, which accounting shall include, among other things, all revenues obtained from each and every one of the utilities on the original Schedule A to the I/D Agreement, and all other revenues obtained from sales of the IFS-2C technology to any and all utilities;

(b) A decree that defendant CoaLogix holds any and all revenues received as a result of its agreement with Solucorp dated on or about May 1, 2008, in constructive trust for EES' benefit; and

(c) A decree that defendant CoaLogix shall surrender, transfer, remit and/or pay to EES any and all revenues received from the sale of Solucorp's IFS-2C technology to any of the forty-three (43) utilities on Schedule A attached to the I/D Agreement entered into on or about February 26, 2008.

**WHEREFORE,** plaintiff demands judgment as follows:

(a) Monetary damages;

(b) Equitable relief as alleged above;

(c) Costs and attorney's fees;

(d) Punitive damages; and

(e) Such other and further relief to which plaintiff may be entitled, by virtue of statute, case law, and/or in the discretion of the Court.

### JURY DEMAND

Trial by jury is hereby demanded as to all counts and allegations so demandable.

>PLAINTIFF,
>ENVIRONMENTAL
>ENERGY SERVICES, INC.
>
>By: _____
>Shari M. Goodstein, Esq.
>Fed. Bar No. ct 17622
>Phone: 203-324-8161
>Sgoodstein@goodwin.com
>Eric Lubochinski, Esq.
>Fed. Bar No. ct25842
>Phone: 203-324-8154
>elubochinski@goodwin.com
>Shipman & Goodwin LLP
>300 Atlantic Street, 3rd Floor
>Stamford, CT 06901
>Fax: 203-324-8199

151983 v.01